O

[CLOSED]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| NATIONAL CONFERENCE OF PERSONAL MANAGERS, INC., a Nevada non-for-profit corporation, | ) ) ) ) | Case No. CV 12-09620 DDP (RZx) |
| | ) | **ORDER GRANTING MOTION TO DISMISS** |
| | ) | **IN ACCORDANCE WITH THE MANDATE OF** |
| Plaintiff, | ) | **NINTH CIRCUIT COURT OF APPEALS** |
| | ) | |
| v. | ) | |
| | ) | [Dkt. Nos. 11, 24] |
| EDMUND G. BROWN, JR., | ) | |
| Governor of the State of | ) | |
| California, in his official | ) | |
| capacity; KAMALA D. HARRIS, | ) | |
| Attorney General of | ) | |
| California, in her official | ) | |
| capacity; JULIE A. SU, | ) | |
| California Labor | ) | |
| Commissioner, in her | ) | |
| official capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

Presently before the Court is a motion to dismiss Plaintiff's
Complaint brought by Defendants Edmund G. Brown, Jr., Governor of
the State of California, in his official capacity (the "Governor");
Kamala D. Harris, Attorney General of California, in her official
capacity (the "Attorney General"); and Julie A. Su, California
Labor Commissioner, in her official capacity (the "Labor

Commissioner"). Although the Court previously ruled on the motion, that order was vacated by the Ninth Circuit and remanded with instructions to rule on certain jurisdictional and case-or-controversy questions. (See Dkt. No. 24 (memorandum of the Ninth Circuit panel vacating previous order and remanding).) The Court therefore resumes consideration of the motion in this order.

**I.   BACKGROUND**

Plaintiff National Conference of Personal Managers, Inc. is a national trade association of United States citizens employed as personal managers who provide representation to "artists" as defined in Cal. Labor Code § 1700.4(b). (Compl. ¶ 10.) As explained in Plaintiff's Opposition papers, a personal manager oversees the work of others working for the artist, such as the publicist, business manager, transactional attorney, and various talent agents.[1] (Opp. at 2.)

California's Talent Agencies Act ("TAA") provides that "[n]o person shall engage in or carry on the occupation of a talent agency without first procuring a license therefor from the Labor Commissioner." Cal. Labor Code § 1700.5. A "[t]alent agency" is defined as "a person or corporation who engages in the occupation

---

[1]The California Supreme Court has explained:

Agents procure roles; they put artists on the screen, on the stage, behind the camera; indeed, by law, only they may do so. Managers coordinate everything else; they counsel and advise, take care of business arrangements, and chart the course of an artist's career.

This division largely exists only in theory. The reality is not nearly so neat. The line dividing the functions of agents, who must be licensed, and of managers, who need not be, is often blurred and sometimes crossed.

Marathon Ent., Inc. v. Blasi, 42 Cal. 4th 974, 980 (2008).

1   of procuring, offering, promising, or attempting to procure

2   employment or engagements for an artist or artists . . . ."  Cal.

3   Labor Code § 1700.4.  If a person has procured employment for an

4   artist without a license, the Labor Commissioner is empowered to

5   void the contract.  (Compl. ¶ 38.)

6       The California Supreme Court case <u>Marathon Ent., Inc v. Blasi</u>

7   demonstrates how the TAA functions.  42 Cal. 4th 974 (2008).

8   There, Marathon, a personal manager, sued Rosa Blasi, an actress,

9   for its commission on her earnings from a television show, alleging

10  that Blasi had reneged on her oral agreement to pay a commission on

11  her employment earnings.  <u>Id.</u> at 981.  Blasi obtained a stay of the

12  action and filed a petition with the Labor Commissioner, alleging

13  that Marathon had violated the TAA by procuring employment for her

14  without a talent agency license.  <u>Id.</u>  The Commissioner agreed and

15  voided the contract.  <u>Id.</u>  Marathon appealed the Commissioner's

16  ruling to the superior court.  <u>Id.</u> at 981-82.  After a series of

17  appeals, the California Supreme Court held that the TAA does apply

18  to personal managers and that personal managers may not recover

19  fees for employment procured in violation of the TAA.  <u>Id.</u> at 986.

20  It affirmed the court of appeal's decision, which had severed and

21  voided the illegal portion of the contract only.  <u>Id.</u> at 982.

22      Plaintiff challenges the constitutionality of the TAA on

23  several grounds.  Plaintiff asserts that its members do not have

24  notice of which acts they can or cannot perform for its clients

25  without obtaining a license.  It alleges that the TAA is

26  unconstitutionally vague because it does not define "procure

27  employment," that it results in involuntary servitude because

28  Plaintiff is not properly compensated for its labor in violation of

3

1  the Thirteenth Amendment, that it interferes with interstate

2  commerce because it discriminates against out-of-state personal

3  managers in violation of the Commerce Clause, and that it restricts

4  Plaintiff's commercial speech in violation of the First Amendment.

5      Defendants moved to dismiss on the grounds that the Governor

6  and Attorney General have sovereign immunity, no case or

7  controversy exists with the Labor Commissioner, Plaintiff lacks

8  standing, and the Complaint fails on the merits.  On March 5, 2013,

9  the Court granted Defendants' Motion to Dismiss on the merits after

10 finding that the Plaintiff "likely has standing," that the Labor

11 Commissioner "was likely the appropriate party to sue," and that

12 the Governor and Attorney General "likely have sovereign immunity."

13 (Dkt. No. 17.)

14     On March 6, 2015, the Ninth Circuit vacated the Court's order

15 and remanded for a determination of the jurisdictional and standing

16 issues.  (Dkt. No. 24.)

17 **II. LEGAL STANDARD**

18     A complaint will survive a motion to dismiss when it contains

19 "sufficient factual matter, accepted as true, to state a claim to

20 relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S.

21 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

22 570 (2007)).  When considering a Rule 12(b)(6) motion, a court must

23 "accept as true all allegations of material fact and must construe

24 those facts in the light most favorable to the plaintiff." Resnick

25 v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).  Although a complaint

26 need not include "detailed factual allegations," it must offer

27 "more than an unadorned, the-defendant-unlawfully-harmed-me

28 accusation." Iqbal, 556 U.S. at 678.  Conclusory allegations or

4

1  allegations that are no more than a statement of a legal conclusion

2  "are not entitled to the assumption of truth." Id. at 679.   In

3  other words, a pleading that merely offers "labels and

4  conclusions," a "formulaic recitation of the elements," or "naked

5  assertions" will not be sufficient to state a claim upon which

6  relief can be granted.   Id. at 678 (citations and internal

7  quotation marks omitted).

8      "When there are well-pleaded factual allegations, a court

9  should assume their veracity and then determine whether they

10 plausibly give rise to an entitlement of relief." Id. at 679.

11 Plaintiffs must allege "plausible grounds to infer" that their

12 claims rise "above the speculative level." Twombly, 550 U.S. at

13 555. "Determining whether a complaint states a plausible claim for

14 relief" is a "context-specific task that requires the reviewing

15 court to draw on its judicial experience and common sense." Iqbal,

16 556 U.S. at 679.

17 **III. DISCUSSION**

18     **A. Jurisdiction**

19     Defendants argue that the Governor and the Attorney General

20 have sovereign immunity and that no case or controversy exists

21 between Plaintiff and the Labor Commissioner. They also assert that

22 Plaintiff does not have standing to bring the case.   The Court

23 finds that the Governor and Attorney General have sovereign

24 immunity.   The Court also finds that the Labor Commissioner was the

25 appropriate party to sue for her non-adjudicatory acts and that

26 Plaintiff has standing to bring its claims.

27 ///

28 ///

### 1. Governor and Attorney General

Federal courts can adjudicate only those cases that the Constitution and Congress authorize them to adjudicate.  <u>Finley v. United States</u>, 490 U.S. 545, 558-59 (1990).  Under the Federal Rules of Civil Procedure, the court must dismiss an action if it determines "at any time" that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h).

With certain exceptions, the Eleventh Amendment has been construed to bar an action brought in federal court by a private person against a state or a state agency.  <u>Edelman v. Jordan</u>, 415 U.S. 651, 662-63 (1974); <u>Alabama v. Pugh</u>, 438 U.S. 781, 782 (1978). One such exception permits suits brought against named state officials in which the plaintiff seeks prospective relief.  <u>Quern v. Jordan</u>, 440 U.S. 332, 337 (1979).

To sue a state official under this exception, the official "must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party."  <u>Ex Parte Young</u>, 209 U.S. 123, 157 (1908).  <u>See</u>, <u>e.g.</u>, <u>Nat'l Audubon Soc'y, Inc. v. Davis</u>, 307 F.3d 835, 846-47 (9th Cir. 2002)(when seeking to enjoin the enforcement of a statute banning certain animal traps, a suit against the Governor and the Secretary of Resources was barred because there was "no showing that they have the requisite enforcement connection," but a suit against the Director of the California Department of Fish & Game, who had "direct authority over and principal responsibility for enforcing" the statute, was not barred).  <u>Cf.</u> <u>Culinary Workers Union, Local 226 v. Del Papa</u>, 200 F.3d 614, 619 (9th Cir. 1999) (finding that the Attorney

1  General's cease and desist letter, which threatened to refer

2  information about violations to prosecutors, established sufficient

3  connection with the enforcement of the statute).

4      Here, the Governor and Attorney General are not alleged to

5  have any specific connection to the enforcement of the TAA.  The

6  Complaint states that the Governor is "responsible for executing

7  the laws of California" and that the Attorney General is "the

8  'chief law officer of the State,' with a duty to 'see that the laws

9  of the State are uniformly and adequately enforced.'"  (Compl.

10  ¶¶ 12-13.)  Plaintiff claims that "before the Governor signed the

11  TAA (or any bill) into law, he should have ordered an investigation

12  of the legality and constitutionality of the law."  (Opp. at 17.)

13  Because the Attorney General is "obligated to recognize any

14  deficiencies in state law . . . and to work to end such wrongful

15  enforcement," she is "either actively or passively allowing an

16  unconstitutional enforcement on the people of California."  (Id.)

17      However, these allegations of general enforcement of laws do

18  not establish the "requisite enforcement connection" between the

19  defendants and the TAA.  See Nat'l Audubon Soc'y, 307 F.3d at 846-

20  47; see also Long v. Van de Kamp, 961 F.2d 151, 152 (9th Cir. 1992)

21  (per curiam) ("We doubt that the general supervisory powers of the

22  California Attorney General are sufficient to establish the

23  connection with enforcement required by Ex parte Young").

24      The Court finds that these general duties do not establish a

25  sufficient connection between the Governor or the Attorney General

26  and the enforcement of the TAA to meet the requirements of Ex Parte

27  Young.

28  ///

1                    **2. Labor Commissioner**

2        Unlike the Governor and the Attorney General, the Labor

3   Commissioner has particular responsibility in the enforcement of

4   the TAA.  She has the authority and duty to issue licenses (§

5   1700.3), accept license applications (§ 1700.6), perform

6   investigations in relation to licenses (§ 1700.7), collect the bond

7   for licenses (§ 1700.15), and revoke and suspend licenses

8   (§ 1700.21).  She may "adopt, amend, and repeal such rules and

9   regulations as are reasonably necessary" to enforce the TAA

10  (§ 1700.29).  She therefore is the proper party to sue under the <u>Ex</u>

11  <u>Parte Young</u> analysis, as she has "some connection with the

12  enforcement of the act."  <u>Ex Parte Young</u>, 209 U.S. at 157.

13  Plaintiffs allege that the Labor Commissioner is responsible for

14  applying, enforcing, and interpreting the TAA in a way that

15  violates their rights.  (Compl. ¶¶ 1, 14.)

16       Section 1983 creates a civil cause of action for the

17  "deprivation of any rights, privileges, or immunities secured by

18  the Constitution and laws" by any person acting "under color of any

19  statute, ordinance, [or] regulation."  42 U.S.C. § 1983.

20  Injunctive relief shall not be granted "in any action brought

21  against a judicial officer for an act or omission taken in such

22  officer's judicial capacity," unless declaratory relief is

23  unavailable or a declaratory decree was violated.  <u>Id.</u>  "[A]t least

24  ordinarily, no 'case or controversy' exists between a judge who

25  adjudicates claims under a statute and a litigant who attacks the

26  constitutionality of the statute."  <u>Grant v. Johnson</u>, 15 F.3d 146,

27  148 (9th Cir. 1994) (quoting <u>In re Justices of Supreme Court of</u>

28  <u>Puerto Rico</u>, 695 F.2d 17, 21 (1st Cir. 1982).  Thus, "judges

1   adjudicating cases pursuant to state statutes may not be sued under

2   § 1983 in a suit challenging [a] state law." Id.

3       Defendants argue that the Labor Commissioner "acts in a quasi-

4   judicial capacity" and therefore may not be sued for injunctive

5   relief under section 1983.  (MTD at 9.)  The Labor Commissioner

6   acts "solely as an adjudicator in disputes involving the TAA, and

7   otherwise exercises no regulatory authority over personal

8   managers." (MTD at 10.)  When a controversy arises under the TAA,

9   the matters in dispute shall be referred to the Labor Commissioner,

10  "who shall hear and determine the same, subject to an appeal within

11  10 days after determination, to the superior court where the same

12  shall be heard de novo."  Cal. Labor Code § 1700.44(a).  If an

13  appeal is not timely filed, the Commissioner's determination is

14  final and binding.  Preston v. Ferrer, 552 U.S. 346, 355 (2008)

15  (citing REO Broad. Consultants v. Martin, 81 Cal. Rptr. 2d 639,

16  642-643 (Ct. App. 1999)).

17      However, it is not clear that these adjudicatory functions are

18  the sole basis for Plaintiff's suit.  Though a decision on a

19  particular controversy is an adjudicatory decision, the Labor

20  Commissioner's role in establishing the parameters of such

21  proceedings and relevant regulations is not adjudicatory, but

22  instead part of her function as an agency executive.  Additionally,

23  Plaintiff alleges that the Labor Commissioner is responsible for

24  licensing, for her "wrongful interpretation that the Act restricts

25  any activity relevant to procurement," and for her discrimination

26  against out-of-state participants in the entertainment industry by

27  not allowing licenses for non-Californians.  (Compl. ¶¶ 69, 80.)

28

1    Although the Complaint is not explicit in its factual
2  allegations pertaining to the Labor Commissioner's non-adjudicatory
3  functions, the Court finds that the Labor Commissioner is the
4  appropriate party to sue in such a case.

5          **3. Standing**

6    The federal judiciary can hear cases involving a controversy
7  arising under the Constitution or other laws of the United States.
8  U.S. Const. art. III, § 2, cl. 1.  A controversy must be "real and
9  substantial" and "definite and concrete, touching the legal
10  relations of parties having adverse legal interests." <u>Aetna Life</u>
11  <u>Ins. Co. of Hartford, Conn. v. Haworth</u>, 300 U.S. 227, 240-41
12  (1937).  Three requirements must be met to establish Article III
13  standing:

14          (1) injury in fact, which means an invasion of a legally
15          protected interest that is (a) concrete and particularized,
16          and  (b)  actual  or  imminent,  not  conjectural  or
17          hypothetical; (2) a causal relationship between the injury
18          and the challenged conduct, which means that the injury
19          fairly can be traced to the challenged action of the
20          defendant, and has not resulted from the independent action
21          of  some  third  party  not  before  the  court;  and  (3)  a
22          likelihood that the injury will be redressed by a favorable
23          decision, which means that the prospect of obtaining relief
24          from the injury as a result of a favorable ruling is not
25          too speculative.

26  <u>Bras v. Cal. Pub. Util. Comn'n,</u> 59 F.3d 869, 872 (9th Cir.
27  1995)(citing  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 559
28  (1992)).

1    To obtain declaratory and injunctive relief, a Plaintiff must
2  "show a very significant possibility of future harm in order to
3  have standing."  Bras, 59 F.3d at 873.  The "mere existence" of a
4  statute that "may or may not ever be applied to plaintiffs" is
5  insufficient to establish a case or controversy for the purposes of
6  Article III or the Declaratory Judgment Act.  W. Mining Council v.
7  Watt, 643 F.2d 618, 627 (9th Cir. 1981).

8    Defendants argue that the TAA is not generally applied to
9  Plaintiff because the "activities for which a license is required
10 . . . are not an inherent part of the functions for which personal
11 managers contract with artists." (MTD at 15.)  However, there is no
12 clear dividing line between the roles of talent agencies and
13 managers; the line is "often blurred and sometimes crossed."
14 Blasi, 42 Cal. 4th at 980.  "Agents sometimes counsel and advise;
15 managers sometimes procure work.  Indeed, the occasional
16 procurement of employment opportunities may be standard operating
17 procedure for many managers and an understood goal when
18 not-yet-established talents . . . hire managers to promote their
19 careers."  Id.  Personal managers "advise, counsel, direct, and
20 coordinate" an artist's career and "advise in both business and
21 personal matters." Id. at 984 (citing Park v. Deftones, 71 Cal.
22 App. 4th 1465, 1469-1470 (1999)).  Therefore, to the extent that
23 personal managers engage in conduct that is considered procuring
24 employment, the TAA is appropriately applied to managers.  See id.
25 at 986-89.

26
27
28

1    Defendants argue that Plaintiff has not alleged an actual

2  injury suffered as a result of the Labor Commissioner's conduct.[2]

3  (MTD at 14.)   The Complaint generally asserts that Plaintiff's

4  members are "actually and directly impacted by the TAA and the

5  manner in which it has been applied." (Compl. ¶ 10.)   Plaintiff

6  alleges that it has been "unfairly singled out without due process

7  and denied its ability to pursue lawful business opportunities to

8  the detriment of Plaintiff and the Artists that it represents."

9  (Compl. ¶ 33.)   Plaintiff also makes a conclusory allegation that

10 "Defendants' wrongful enforcement has destroyed careers, ruined,

11 even shortened lives." (Opp. at 10.)   Plaintiff has not alleged

12 that any one of its members has actually been engaged in a dispute

13 that has been referred to the Labor Commissioner, and it is not

14 clear if the Labor Commissioner will imminently determine a

15 controversy against Plaintiff's members.

16    However, "a real and reasonable apprehension that [a

17 plaintiff] will be subject to liability" creates a case or

18 controversy suitable to seek declaratory relief that a patent is

19 invalid.   Societe de Conditionnement en Aluminium v. Hunter Eng'g

20 Co., 655 F.2d 938, 944 (9th Cir. 1981).   The defendant's actions

21 must cause the apprehension.   Hal Roach Studios, Inc. v. Richard

22 Feiner and Co., 896 F.2d 1542, 1556 (9th Cir. 1989).   The showing

23 of apprehension "need not be substantial" if the plaintiff is

24

25 _____

26    [2]Defendants do not address the existence of a case or
   controversy between Plaintiff and the Governor and Attorney
27 General, concentrating instead on Eleventh Amendment immunity.
   Because the Court agrees that the Governor and Attorney General
28 were not appropriate parties under Ex Parte Young, Plaintiff's
   standing will be addressed solely as to the Labor Commissioner.

1   engaged in an ongoing activity that could be a violation.   Id.

2   (citing Societe de Conditionnement, 655 F.2d at 944).

3       By comparison here, Plaintiff has a "real and reasonable

4   apprehension" that its members will be subject to liability if they

5   do not receive a declaration that the TAA is unconstitutional. (See

6   Compl. ¶ 44.)   Prior cases reveal that other unlicensed parties

7   have indeed faced liability because of the Labor Commissioner's

8   actions.   See Marathon Ent., Inc. v. Fox & Spillane, LLP, 2011 WL

9   4357854, at *2 (Cal. Ct. App. September 20, 2011) ("The other two

10  matters were heard by the Labor Commission, and eventually

11  proceeded to trial."); Blasi, 42 Cal.4th at 981 ("the Commissioner

12  voided the parties' contract ab initio and barred [the manager]

13  from recovery").   Plaintiff asserts that, due to the nature of

14  personal managers' professional responsibilities, its members are

15  "threatened by this enforcement on a round-the-clock basis" and are

16  "always at risk" of enforcement to their detriment. (Opp. at 2-3.)

17      Defendants assert that even if the Labor Commissioner were

18  enjoined from enforcing the TAA, a contract made in violation of

19  the TAA would still be voidable as contrary to public policy, and

20  thus the remedy that Plaintiff seeks would not provide proper

21  redress. (MTD at 14.)

22      The Court disagrees that declaratory or injunctive relief

23  would not resolve Plaintiff's injury.   Without enforcement of the

24  TAA, there is no cause of action for procuring employment without a

25  talent agency license.   Individual contract claims can be brought

26  for breach, unconscionablility, or public policy reasons, but that

27  is true with or without enforcement of the TAA.   Plaintiff is not

28  seeking to avoid liability for those causes of action.   Declaratory

1  and injunctive relief, as Plaintiff seeks (Compl., Prayer ¶¶ 1-5),
2  will provide redress for the injury claimed. (<u>See</u> Compl.
3  ¶¶ 10, 33.)

4      The Court finds that there is a case or controversy and that
5  Plaintiff has standing to bring suit against the Labor
6  Commissioner.  The Court therefore addresses the merits of
7  Plaintiff's claims.

8      **B. Vagueness**

9      Plaintiff makes a facial challenge to § 1700.44, alleging that
10 its failure to define the meaning of "procure employment" renders
11 the statute unconstitutionally vague in violation of the Fourteenth
12 Amendment.  Plaintiff alleges that "'[p]rocure employment' has
13 never been defined by any court.  The uncertainty of knowing when
14 such activity may or not have occurred has left Plaintiff uncertain
15 and highly apprehensive about the permissible parameters of its
16 daily activity."  (Compl. ¶ 59.)

17     A law is not unconstitutionally vague if it provides a "person
18 of ordinary intelligence a reasonable opportunity to know what is
19 prohibited, so that he may act accordingly."  <u>Grayned v. City of</u>
20 <u>Rockford</u>, 408 U.S. 104, 108 (1972).  "When Congress does not define
21 a term in a statute, we construe that term according to its
22 ordinary, contemporary, common meaning."  <u>Human Life of Washington</u>
23 <u>Inc. v. Brumsickle</u>, 624 F.3d 990, 1021 (9th Cir. 2010) (quoting
24 <u>United States v. Kilbride</u>, 584 F.3d 1240, 1257 (9th Cir. 2009)).  A
25 statute may be unconstitutional if it "is so standardless that it
26 authorizes or encourages seriously discriminatory enforcement."
27 <u>Holder v. Humanitarian Law Project</u>, 130 S.Ct. 2705, 2718 (2010)
28 (quoting <u>United States v. Williams</u>, 553 U.S. 285, 304 (2008)).

14

1  Plaintiff has not made any allegations that suggest that the
2  statute is standardless.  In its Opposition, Plaintiff claims that
3  "[a]lmost any act undertaken by Plaintiff, even as innocuous as
4  helping choose a headshot, could and has been linked to the
5  ultimate goal of any artist represented by Plaintiff to get a job."
6  (Opp. at 20.)  However, this allegation, which does not appear in
7  the Complaint, indicates only that the phrase "procure employment"
8  could be interpreted so as to comprise a broad range of activities,
9  broader than is desirable in the eyes of Plaintiff.  This breadth
10  does not render the statute standardless; it may indicate that the
11  activities of personal managers and talent agents have significant
12  overlap with respect to procuring employment for artists.

13      Even if such an allegation were sufficient to be the basis for
14  a claim that the statute is standardless, it is not sufficient to
15  state a claim when California courts have previously interpreted
16  the phrase and determined that its meaning is not vague.  "To
17  'procure' means 'to get possession of: obtain, acquire, to cause to
18  happen or be done; bring about." Wachs v. Curry, 13 Cal. App. 4th
19  616, 628-29 (1993)(quoting Webster's New Int'l Dict. (3d Ed. 1981)
20  at p. 1809).  The TAA uses the word "procure" in this ordinary
21  sense.  The California Court of Appeal pointed out that "[t]he term
22  'procure' in connection with employment is used in numerous
23  California statutes. The fact none of these statutes has ever been
24  challenged is some evidence the term is well understood." Id.
25  (footnote omitted).

26      The Court finds that the TAA is not unconstitutionally vague.
27  ///
28  ///

1      **C. Thirteenth Amendment**

2          The Thirteenth Amendment is "an absolute declaration that

3   slavery or involuntary servitude shall not exist in any part of the

4   United States." <u>Jones v. Alfred H. Mayer Co.</u>, 392 U.S. 409, 438

5   (1968) (quoting <u>Civil Rights Cases</u>, 109 U.S. 3, 20 (1883)). The

6   Supreme Court has traditionally found involuntary servitude to

7   exist only where "the victim had no available choice but to work or

8   be subject to legal sanction." <u>United States v. Kozminski</u>, 487 U.S.

9   931, 943 (1988). <u>See also</u>, <u>e.g.</u>, <u>United States v. Reynolds</u>, 235

10  U.S. 133 (1914) (finding that a criminal surety system imposing

11  criminal sanctions on those who failed to work off a debt

12  constituted involuntary servitude ); <u>Clyatt v. United States</u>, 197

13  U.S. 207, 218 (1905) (finding that the state of peonage, in which

14  the threat of legal sanction coerces a debtor to work off a debt,

15  constitutes involuntary servitude).

16          To prove compulsion, the plaintiff must show that he had, or

17  believed he had, no choice but to continue his state of servitude.

18  <u>See</u> <u>Kozminski</u>, 487 U.S. at 963 (Brennan, J., concurring) (requiring

19  the plaintiff to show that he or she "actually felt compelled to

20  live in a slavelike condition of servitude"); <u>United States v.</u>

21  <u>Shackney</u>, 333 F.2d 475, 486 (2d Cir. 1964) (requiring the plaintiff

22  to show that he had, or believed he had, "no way to avoid continued

23  service or confinement"); <u>Watson v. Graves</u>, 909 F.2d 1549, 1552

24  (5th Cir. 1990) (stating that "[w]hen the employee has a choice,

25  even though it is a painful one, there is no involuntary

26  servitude.") Upon demonstrating compulsion, it is for the trier of

27  fact to decide "whether the physical or legal coercion or threats

28  thereof could plausibly have compelled the victim to serve." <u>United</u>

1  States v. Veerapol, 312 F.3d 1128, 1132 (2002) (quoting Kozminksi,
2  487 U.S. at 952) (O'Connor, J., majority)).

3      Here, Plaintiff alleges that the enforcement of the TAA
4  infringes on its right to be free from involuntary servitude except
5  as punishment for a crime.  (Compl. ¶¶ 66-74.)  Plaintiff alleges
6  that its unlicensed members are subject to involuntary servitude
7  when they are denied a commission due to the voiding of their
8  contracts by the Labor Commissioner.  Plaintiff is incorrect.  Not
9  being compensated for work performed does not inevitably make that
10  work involuntary servitude.  Plaintiff's members have choices.
11  They have the choice to refrain from procuring employment for their
12  clients, to procure employment without a license and risk the
13  voiding of parts of their contracts, or to obtain a license.
14  Because they have a range of options, Plaintiffs have not stated a
15  claim for involuntary servitude in violation of the Thirteenth
16  Amendment.

17      **D. Commerce Clause**

18      Plaintiff alleges that the TAA interferes with interstate
19  commerce because it "has no provision for the issuance of a License
20  to an applicant with an out-of-state business address."  (Compl.
21  ¶ 76.)  Plaintiff's sole factual basis for this allegation is that
22  § 1700.19(b) of the Act states that a license must contain "a
23  designation of the city, street, and number of the premises in
24  which the licensee is authorized to carry on the business of a
25  talent agency."  Based on this single factual allegation, Plaintiff
26  draws the inference that "[n]o provision is made in the Act for
27  identification of any State location other than California."
28  (Compl. ¶ 77.)

1    The Court finds that this inference is weak and is not
2    plausible in light of public documents offered by Defendants
3    indicating that an applicant for a license must indicate city,
4    state, and zip code.  (See RJN Exh. 1,
5    http://www.dir.ca.gov/dlse/talent_agency_license.html.)  Because
6    this evidence makes Plaintiff's inference implausible, and because
7    Plaintiff does not allege that any of its members were refused
8    licenses because they were located outside of California, Plaintiff
9    has not stated a claim for violation of the Commerce Clause.

10       **E. First Amendment**

11       Plaintiff alleges that the TAA and its enforcement violate the
12   First Amendment because it "restricts Plaintiff's commercial speech
13   and does not directly advance a substantial state interest and is
14   far more extensive than necessary.  The TAA and Defendants'
15   enforcement of the TAA imposes more than an incidental burden on
16   protected expression and imposes a burden based on the content of
17   speech and the identity of the speaker."  (Compl. ¶¶ 94-95.)  The
18   Court disagrees.  The TAA regulates conduct, not speech.  It does
19   not limit the speech of a personal manager; it limits the personal
20   manager's ability to enforce contractual obligations when that
21   person engages in the conduct of procuring employment.

22       The fact that the activity of procuring employment takes place
23   through speech does not mean that the TAA is a regulation of
24   speech.  "[I]t has never been deemed an abridgement of freedom of
25   speech or press to make a course of conduct illegal merely because
26   the conduct was in part initiated, evidenced, or carried out by
27   means of language, either spoken, written, or printed."  Giboney v.
28   Empire Storage & Ice Co., 336 U.S. 490, 502 (1949).  Here, speech

18

1   is not made illegal.  The Court agrees with Defendants that "the

2   TAA licenses the *conduct* of procuring employment for artists, not

3   the expressive means by which employment is procured."  (Mot.

4   at 22.)

5       **F. Contracts Clause**

6       The Contracts Clause of the United States Constitution

7   provides that "[n]o State shall . . . pass any . . . Law impairing

8   the Obligation of Contracts."  Art. I, § 10, cl. 1.  The inquiry

9   generally asks three questions: "whether there is a contractual

10  relationship, whether a change in law impairs that contractual

11  relationship, and whether the impairment is substantial."  <u>Gen.</u>

12  <u>Motors Corp. v. Romein</u>, 503 U.S. 181, 186 (1992).  The contract

13  must be in existence when the law allegedly impairing it is enacted

14  or altered; a party who enters into a contract after a law is

15  enacted is subject to that law.  <u>See</u>, <u>e.g.</u>, <u>Veix v. Sixth Ward</u>

16  <u>Bldg. & Loan Ass'n of Newark</u>, 310 U.S. 32, 38 (1940) (when the

17  petitioner "purchased into an enterprise already regulated in the

18  particular to which he now objects, he purchased subject to further

19  legislation upon the same topic.").

20      Here, Plaintiff does not allege that the law has been altered

21  in any way subsequent to the formation of a particular contract.

22  Because Plaintiff points to no contract in existence when the TAA

23  was enacted or altered, Plaintiff has failed to state a claim for a

24  violation of the Contracts Clause of the Constitution.

25  **IV. CONCLUSION**

26      The Court finds that, while Plaintiff has standing and has

27  appropriately sued the Labor Commissioner, Plaintiff has failed to

28  state a claim.  For these reasons, the motion to dismiss is

                                    19

1    GRANTED.   Because any amendment would be futile, the Court grants

2    the Motion with prejudice.

3

4    IT IS SO ORDERED.

5

6

7    Dated: August 13, 2015

8                                            DEAN D. PREGERSON
                                             United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28